IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EMEREIDA M.S.[1], <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil No. 23-1054 (GLS) |

**OPINION AND ORDER**

Plaintiff seeks review of the Commissioner of the Social Security Administration's denial of her application for disability insurance benefits. Docket No. 3. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 15. The Commissioner opposed. Docket No. 19. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c). Docket No. 8. After careful consideration of the administrative record and the parties' briefs, the Commissioner's decision denying disability benefits is **AFFIRMED.**

**I.      Procedural Background**

Plaintiff, a 36-year-old female, worked as a hospital products assembler in Puerto Rico.[2] Tr. 111, 134-37.[3] Plaintiff filed an application for disability insurance benefits claiming that, as of August 24, 2018, the following conditions limited her ability to work: low back pain due to surgery, depression, anxiety, and insomnia. Tr. 522, 643. The application was denied initially and on reconsideration. Tr. 522-560. Plaintiff requested a hearing before an Administrative Law Judge

---

[1]   Plaintiff's last name is omitted for privacy reasons.

[2]   Plaintiff sustains that the ALJ erred in classifying her past relevant work. And that her past relevant work was as a machine operator at a factory.

[3]   "Tr." refers to the transcript of the record of proceedings.

1

("ALJ") and, on September 15, 2021, a hearing was held via telephone before ALJ Livia Morales. Tr. 124-153. Plaintiff testified and was represented by counsel. Id. Vocational Expert Alina Kurtanich ("VE") also testified. Id. The ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of August 24, 2018, through November 19, 2021, the date of the decision. Tr. 113. Plaintiff asked the Appeals Council to review, but the request was denied on December 20, 2022 (Tr. 1-9), rendering the Commissioner's decision the final decision for review by this Court. On February 3, 2023, Plaintiff initiated this action and both parties filed memoranda in support of their respective positions. Docket Nos. 3, 15, 19.

## II.     Legal Framework

### A.     Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. § 423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-42. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit claimant's physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986). If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to

preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Sec'y of Health & Hum. Servs., 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

**B.     Standard of Review**

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). The Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See id.; Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).

A determination of substantiality must be based on the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence.

3

Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987).

### III. Discussion

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 24, 2018, the alleged onset of disability. Tr. 104. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): lumbar spine disorder with radiculopathy s/p laminectomy, post-laminectomy syndrome, major depressive disorder, and generalized anxiety disorder. Id. The ALJ further found that Plaintiff had impairments that were not severe as these did not cause, individually or in combination with other impairments, more than minimal work-related difficulties for a continuous period of at least 12 months. Tr. 105. The non-severe impairments were Plaintiff's diabetes mellitus, early carpal tunnel syndrome, onychomycosis, fatty liver, renal colic, hepatic steatosis, umbilical hernia, urinary tract infection, benign neoplasm of vertebral column, and obesity. Id.

At the third step of the sequential analysis, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 105. The ALJ further found, after determining that Plaintiff had mild and moderate limitations in the four functional areas, that the "Paragraph B" criteria were not met because Plaintiff's mental impairments did not result in at least one extreme or two marked limitations in a broad area of functioning. Tr. 105-06. The ALJ then proceeded to determine Plaintiff's RFC. Tr. 107-11. The ALJ stated that, in formulating the RFC, she considered all impairments, including those that were non-severe. Tr. 105. The ALJ concluded that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that

> she can stand and walk 4 hours in an 8-hour workday. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, and balance, stoop, kneel, crouch, and crawl, all occasionally. The claimant can work at unprotected heights only occasionally, and with moving mechanical parts and

operating a motor vehicle frequently. She is able to perform simple, routine tasks, use judgment to make simple work-related decisions, and deal with changes in a simple work setting. Tr. 107.

The ALJ deemed that Plaintiff was able to perform her past relevant work as hospital products assembler, as defined by the Dictionary of Occupational Titles ("DOT"). Tr. 111. The ALJ further found that there were also other jobs that existed in significant numbers in the national economy that Plaintiff could perform, considering her age, education, work experience, and RFC. Tr. 111-12. These were: mail clerk, electronics worker, or garment sorter. The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 113.

### A. Plaintiff's Challenges to the ALJ's Decision

Plaintiff argues that the ALJ erred at step four of the sequential process by mistaking her past relevant work and at step five by finding that Plaintiff could perform light-level jobs despite an RFC that limits her to less than full range of light-level work. Additionally, that the ALJ erred in the assessment of her RFC. Docket No. 15. The Court finds that a remand is not warranted.

#### 1. Past Relevant Work Determination

Plaintiff argues that the ALJ erred at step four of the sequential process by classifying her past relevant work as a "hospital product assembler" instead of as a "machine operator" at a factory.[4] Docket No. 15 at pp. 10-12. The Commissioner counters that, because the ALJ continued to make a finding at step five of the sequential evaluation that Plaintiff was not disabled because there were sufficient jobs in the national economy that someone with Plaintiff's RFC could perform, the Court need not discuss the step four determination. Plaintiff also seems to concede that the confusion at step four might be harmless as the ALJ continued to step five of the sequential analysis. Docket No. 15 at p. 12. The Court agrees. See Berry v. Colvin, 657 Fed.Appx. 650, 652 (9th Cir. 2016) (the ALJ erred concluded at step four that the claimant could perform his past relevant work, but the error was harmless because of the ALJ' step five finding that there were other jobs which existed in significant numbers in the national economy that the claimant could

---

[4] During the hearing there was some confusion as to the description of Plaintiff's past relevant work. Tr. 147-53. The ALJ asked the VE to address Plaintiff's last job because the income was higher than for Plaintiff's other jobs. Tr. 147. The ALJ clarified that she wanted a description on the job "that [Plaintiff] worked for Harvey Hoover, [as a] manufacturing operator." Id. The VE replied, "that's the first job I gave." However, the first job described by the VE was "hospital products assembler" rather than "manufacturer operator". See Tr. 147 ("The claimant was employed as a hospital products assembler, DOT 712.687-010…Oh, in Spanish. I forgot, sorry. Small products assembler[.]").

5

perform). The Court will discuss Plaintiff's challenge to the step five analysis. Cf. Otero v. Colvin, 2015 WL 5089810, at *6 (D.N.H. Aug. 27, 2015) (court may affirm based on alternate step five findings).

### 2. Step Five Determination

Plaintiff challenges the ALJ's alternate finding at step five of the sequential process that Plaintiff could perform other jobs that exist in significant numbers in the national economy. Docket No. 15 at pp. 12-15. Specifically, Plaintiff posits that the ALJ found that she could perform light level jobs despite formulating an RFC for less than full range of light level work (Plaintiff could only stand and walk for four out of eight hours). Id. at p. 18. The Commissioner argues that, because the VE confirmed the existence of jobs that Plaintiff could perform at the sedentary level, which account for Plaintiff's standing and walking limitations, any error on this front is harmless and does not justify a remand. Docket No. 19 at pp. 5-6.

At the hearing, the ALJ asked the VE hypothetical questions. Tr. 147-49. First, the ALJ asked to assume that Plaintiff was limited to light level work, except that she could walk and stand four hours in an eight-hour day. The other limitations remained the same. The VE stated that Plaintiff could perform her past work, as well as the job of a mail clerk, electronic worker, or garment sorter. Second, assuming that Plaintiff was limited to sedentary level work, but the other limitations remained, the VE explained that Plaintiff could not perform her past job but could work as a document preparer, credit checker, or charge account clerk.[5] The VE testified that there were over 85,000 jobs available in those categories. Third, the ALJ asked if Plaintiff could perform the sedentary level jobs just mentioned assuming she had to change positions every 30 minutes. The VE replied that she could, as long as she remained on task while alternating positions. Plaintiff's attorney then asked hypothetical questions, which assumed different RFC limitations from the ones determined by the ALJ: taking five-minute breaks every thirty minutes. To that hypothetical, the VE responded that there would be no jobs that Plaintiff could perform.

The ALJ relied on the VE's testimony about an individual with light level work limitations, including the additional limitation of walking and standing four hours in an eight-hour day. The

---

[5] During the hearing, the VE misstated the DOT code for "credit checker," but later clarified the DOT code for "call-out operator," which is the equivalent to "credit checker." The call-out operator job entails compiling credit card information using the telephone and copying the information onto forms to update credit records. See 1991 WL 672186 (Jan. 1, 2016). See García v. Berryhill, 2018 WL 11443457, at *1 (1st Cir. Aug. 14, 2018) (unpublished) (a VE's misstating of DOT code is a trivial mistake which does not require remand).

ALJ did not include sedentary level work limitations. The Commissioner "acknowledges that the ALJ did not expressly rely on the sedentary jobs the vocational expert identified to support her alternative step-five finding." Nonetheless, the Commissioner sustains that a remand is unwarranted because it would be for the "formulaic purpose" of having the ALJ add to her decision what is evident from the record. Docket No. 19 at pp. 6-7. The Court agrees. See Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) (a remand is not essential if it will be no more than an empty exercise).

The ALJ credited the VE's assessment regarding the light level jobs available for Plaintiff to perform. The VE's testimony that there were 85,000 jobs available assumed the sedentary level work limitations, including those in the ALJ's RFC determination. There is no reason to assume that the ALJ would not have credited the VE's testimony regarding sedentary level jobs. See Bennett v. Berryhill, 256 F.Supp.3d 93, 97 (D. Mass. June 20, 2017) (after finding that the ALJ credited the VE's testimony regarding occupations at the light level, "there [would be] no persuasive reason why [the ALJ] would not similarly do so for sedentary work. Thus, the VE's testimony would direct a finding that plaintiff was not disabled."). A claimant is not disabled if he or she can adjust to other work. 20 C.F.R. § 404.1520(g). See also 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work."). And if other jobs exist in significant numbers in the national economy. Id. § 404.1560(c). The VE's findings that there were 85,000 jobs at the sedentary level that Plaintiff could perform is sufficient. See Muñoz-Cintrón v. Comm'r of Soc. Sec., 2021 WL 840905, at *4 (D.P.R. Mar. 5, 2021). See also Bonner v. Colvin, 153 F.Supp.3d 465, 477 (D. Mass. 2015) (the VE identified a significant number of other jobs the claimant could perform even with a more restricted RFC, and so any error was harmless given that the outcome would stay the same). Plaintiff has not alleged how a remand would lead to a different result or the prejudice which resulted from the challenge she brings before the Court. See Shinseki v. Sanders, 556 U.S. 396, 409-410 (2009) ("the burden of showing that an error is harmful falls upon the party attacking the agency's determination"). Given that the only purpose of the remand would be for the ALJ to include in her decision that there are jobs at the sedentary level that Plaintiff could perform (and that there is substantial evidence in the record that supports that decision) there is no reason to remand. Cf. Shaw v. Sec'y of Health & Hum. Servs., 1994 WL 251000, at *5 (1st Cir. 1994) (unpublished) ("while the ALJ did not expressly cite the agency doctor's reports … he implicitly took them into account. While we would prefer more

7

explanatory detail … we see no reason to return this case for the purely formulaic purpose of having the ALJ write out what seems plain on a review of the record."). See also Kurzon v. U.S. Postal Serv., 539 F.2d 788, 796 (1st Cir. 1976) (remand is not necessary when the mistake by the agency is one that does not bear on the process or the substance of the agency's decision); Gill v. Colvin, 2014 WL 12906901, at *4 (1st Cir. Apr. 9, 2014) (unpublished) (remand not necessary where it would not lead to different result); Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) (remand "not essential if it will amount to no more than an empty exercise.").

### 3. RFC Determination

#### a. Prior Administrative Medical Findings

Plaintiff next challenges the ALJ's failure to explain why she limited Plaintiff's work to light level despite noting in her decision that the agency consultants found Plaintiff being limited to sedentary level jobs. Docket No. 15 at p. 19. The Commissioner counters that a remand is unwarranted for the same reasons discussed in the prior section. Docket No. 19 at pp. 7-10. And that, in any event, the ALJ's reference to "narrow-range sedentary work" was a mere typographical error with no consequence.

The ALJ discussed the opinion of State agency consultants. Tr. 111. The ALJ noted that "[t]he opinion of the medical consultants who found the claimant to have a severe spinal disorder limiting her to narrow-range sedentary work with mostly occasional postural limitations is persuasive, for it is supported by the record." (Emphasis added). However, a review of the record shows that the agency's medical consultant, Dr. Florentino Figueroa, stated that Plaintiff could occasionally lift and/or carry 20 pounds at a time and frequently lift and/or carry 10 pounds. Tr. 534-36. Such exertional limitations are equivalent to light work. See 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). Moreover, the disability determination explicitly states that "[b]ased on the seven strength factors of the physical RFC …, the individual demonstrates the maximum sustained work capability for the following: Narrow range of light work." (Emphasis added). Tr. 539. The agency consultants made the same determination at the reconsideration level. Tr. 551, 554-56. As such, the ALJ's reference to the State agency consultants limiting Plaintiff to a "narrow-range sedentary work" is very likely a typographical error which does not justify a remand. See Wearen v. Colvin, 2015 WL 1038236, at *13 (W.D.N.Y. Mar. 10, 2015) (finding that the claimant suffered from a severe impairment in right knee when evidence sustains a finding of

8

impairment on left knee is a "scrivener's error" that did not warrant remand); López v. Astrue, 371 F.App'x 887, 888 n.1 (10th Cir. 2010) ("[w]e note that although the ALJ specifically stated that [plaintiff] retained the RFC to perform sedentary work, … this limitation is likely a typographical error, as the Commissioner suggests, because the lifting, standing, and walking limitations the ALJ articulated are consistent with light work, not sedentary work[.]"). And as discussed above, there are a significant number of jobs available for individuals with Plaintiff's RFC's non-exertional limitations.

### b.      Plaintiff's Statements

An ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 82 Fed. Reg. 49464 (Oct. 25, 2017). Moreover, SSR 16–3p provides that, in conducting that inquiry, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. An ALJ "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16–3p, 82 Fed. Reg. at 49465.

Plaintiff posits that the ALJ erred in disregarding her statements concerning the intensity, persistence, and limiting effects of the symptoms associated with her back pain. Docket No. 15 at pp. 21-22. But the ALJ did consider Plaintiff's subjective statements regarding her conditions and pains along with medical evidence in the record and found that Plaintiff's statements were not entirely consistent with the evidence in the record. Tr. 107-08, 168-187, 661-672. The ALJ discussed how Plaintiff's conditions caused her back pain with swelling of the legs and burning sensations. Tr. 107. And how the pain made it difficult for her to sleep at night. Id. The ALJ further noted how Plaintiff relies on medications and how she struggles in carrying out personal activities such as dressing, bathing, performing house chores, cooking, and driving. Tr. 108, 179-185. The ALJ considered that Plaintiff's pain has affected her emotionally, causing her to feel anxious and depressed. Tr. 108, 179-80, 183. That Plaintiff needs reminders regarding the taking of medications and that she barely socializes except with her children. Tr. 183-84. And that Plaintiff also alleged having limited abilities to lift, crouch, stoop, stand, reach, walk, sit, kneel, and climb

9

stairs, as well that she had impaired memory and inability to concentrate. [6] Tr. 108, 184. The ALJ noted, however, that Plaintiff could perform light household chores, such as tidying up, washing dishes, loading the washer, folding the laundry, and in-store shopping. Plaintiff also spent time with her children, prepared meals, and was capable of counting change. Tr. 108. [7] The ALJ then proceeded to discuss the medical evidence.

The ALJ discussed Plaintiff's MRIs of the lumbar spine and that she had disc space narrowing, disc bulges, and canal stenosis. Tr. 108, 351, 406. The record also showed that Plaintiff was treated at the UPR School of Medicine ("UPR") for a lumbar spine condition in November 2018. Tr. 108, 433-521. A neurosurgery note from the UPR documented Plaintiff's allegations of low back pain radiating to the cervical area with sporadic right leg pain. Tr. 502. The pain was aggravated by fixed positions and relieved with bed rest. Id. Although she had tenderness over lumbar paraspinal muscles, Plaintiff was noted to have a normal gait, adequate muscle bulk and tone without atrophy, spasticity, full muscle strength in all muscle groups of the lower extremities, and normal sensations and reflexes. Tr. 108. In December 2018, Plaintiff underwent surgery for herniated discs. Tr. 227. Post-surgery, Plaintiff visited the emergency room on several occasions complaining of lower back pain. Tr. 109. On January 24, 2019, a general examination was performed, and the results revealed that Plaintiff was within normal limits. Tr. 109, 197-202. A lumbar CT study of Plaintiff showed she had normal body heights, disc spaces, no acute fractures or dislocations, and no evidence of canal stenosis. Tr. 109. Follow up emergency room visits and CT scans of Plaintiff showed no acute abnormalities. Tr. 109, 496-98. Plaintiff was able to walk without difficulties and, although she did exhibit diminished cervical and lumbar range of movement due to pain, Plaintiff showed preserved strength, sensation, and reflexes. Id. An

---

[6] Plaintiff urges the Court to consider a declaration she sent to the Commissioner regarding her symptoms. See Docket No. 15 at p. 22; Tr. 188-190. However, that declaration was sent to the agency after the ALJ's decision and was not part of the evidence before the ALJ. It could have been part of the additional evidence submitted by Plaintiff to the Appeals Council for review. See 20 C.F.R. 404.976(b). However, the Appeals Council denied Plaintiff's request for review. The Court will thus refrain from considering said evidence. Apfel v. Comm'r of Soc. Sec., 244 F.3d 1, 4-5 (1st Cir. 2001) (district court could review the ALJ's decision solely on evidence presented to the ALJ, even though Appeals Council allowed claimant to proffer new evidence into the record prior to denying review).

[7] Plaintiff succinctly argues that the ALJ mischaracterized her daily activities. Docket No. 15 at p. 21-22. However, she does admit that she is able to prepare meals and drive, even if both activities require assistance or company at times. Id. And Plaintiff also admits that she can do household chores even if it takes her longer than normal. Id.

examination performed on July 16, 2021, showed that Plaintiff had full motor strength in all extremities, normal reflexes, and no atrophy, weakness, or tremors. Tr. 433.

Consultative examiner Dr. Olga V. Ríos, a neurologist, evaluated Plaintiff on January 30, 2020. Tr. 109, 900-07. Plaintiff reported lower back pain despite two surgeries and three blocks. Upon physical examination, Plaintiff walked slowly, but had no difficulty walking in heels, toes or in tandem, and showed no Romberg sign. She had left knee pain but showed no disbalance or significant loss of strength. In fact, Dr Ríos rated her strength in both lower and upper extremities 4 out of 5. Dr. Ríos diagnosed Plaintiff with status-post lumbar spine surgeries and early carpal tunnel syndrome bilaterally.

Regarding Plaintiff's mental impairments, the ALJ accounted for Plaintiff's visits to APS Clinics for major depressive disorder, recurrent moderate. Tr. 110, 240-322. Plaintiff's mental evaluations showed that, although depressed and anxious with diminished concentration and judgment at times, Plaintiff had appropriate appearance, calm behavior, normal motor activity, normal attention, normal impulse control, and a logical, coherent, and relevant thought process. Id. She was also fully oriented, with intact memories and average intellect. The ALJ further noted that Plaintiff had been partially hospitalized at a mental institution in September 2019 for five days due to exacerbated depressive symptoms. Tr. 110, 324-34. Despite her depressed mood, diminished speech, concentration problems, and poor attention, Plaintiff was noted to have been fully oriented, coherent, logical and relevant, with intact memories. Tr. 327. Notes upon discharge showed that Plaintiff was alert, logical, and coherent, with no suicidal ideas. Tr. 324. Follow-up notes from Plaintiff's psychologist dated January 29, 2020, showed that Plaintiff was stable. Tr. 349-50. In fact, her depression disorder was diagnosed as recurrent mild. Id.

On January 21, 2020, consultative psychologist Javier Rodríguez evaluated Plaintiff. Tr. 110-11, 895-99. Plaintiff alleged being depressed and sad because of her back pain and limitations. Despite her sad and frustrated mood, Plaintiff was adequately dressed, clean, oriented, and had a logical and coherent thought process. She denied suicidal or homicidal ideas. She further showed diminished immediate and short-term memories, adequate recent and long-term memories, adequate concentration, and average intellect. Dr. Rodríguez diagnosed Plaintiff with major depressive disorder, recurrent moderate and further found that she was able to understand and follow simple instructions, maintain adequate level of attention on simple things, and manage funds.

The Court is satisfied that the ALJ did not merely disregard Plaintiff's statements of her symptoms. She considered those statements but ultimately found them to be inconsistent with the objective medical evidence in the record. See Sacilowski v. Saul, 959 F.3d 431, 441 (1st Cir. 2020) (the ALJ may disregard claimant's allegations where there is direct evidence to rebut claimant's testimony and where claimant's credibility could be questioned). Although Plaintiff may not agree with the outcome, and even if the record could justify a different one, the Court must uphold the ALJ's decision if it is supported by substantial evidence. Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). See also Olivera-Bahamundi v. Comm'r of Social Sec., 2021 WL 1177339, at *6 (D.P.R. Mar. 29, 2021) (the Court will not reweigh the evidence already evaluated by the ALJ). This is the case here. There is substantial evidence in the record to sustain the ALJ's conclusions, even after considering and weighing Plaintiff's statements of the intensity, persistence, and the effects of pain.

## IV.   Conclusion

After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March 2024.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge